UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| CHELSEA WATERS, | ) | |
| | ) | |
| Plaintiff, | ) | Jury Demanded |
| | ) | |
| v. | ) | No. _____ |
| | ) | |
| STARPLEX SCIENTIFIC CORP., | ) | |
| | ) | |
| Defendant. | ) | |

# COMPLAINT

Plaintiff sues Defendant and shows unto the Court as follows:

## I. JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked by Plaintiff pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the value of $75,000 and there is complete diversity of citizenship among the parties to this matter. Venue is proper with this Court in that the actions giving rise to this matter occurred in Bradley County, Tennessee.

## II. NATURE OF PROCEEDING

2. This action is brought to secure redress for violation of the Tennessee Pregnant Workers Fairness Act ("TPWFA"), Tenn. Code Ann. §50-10-101 et seq. This action seeks equitable relief in the form of back pay, prejudgment interest, reinstatement or front pay in lieu of reinstatement; as well as legal relief in the form of compensatory damages, punitive damages, and attorney fees.

## III. THE PARTIES

3. Plaintiff Chelsea Waters is a resident of Bradley County, Tennessee.

4. Defendant Starplex Scientific Corp. is a for-profit corporation organized under the laws of the State of Delaware. It operates a manufacturing facility located at 705 Industrial Drive, SW in Bradley County, Tennessee.

## IV. FACTUAL BASES OF PLAINTIFF'S CLAIM

5. Plaintiff was employed by Defendant as a production worker at its facility located in Cleveland, Tennessee, from August 2021 until February 13, 2023.

6. On January 4, 2023, after confirming her pregnancy with her primary care physician, Plaintiff notified her supervisor Patty Oster and manager Richee Goldsmith of her pregnancy.

7. When confronted with the news of her pregnancy, Mr. Goldsmith advised Plaintiff to leave work and to get a note from her doctor about her ability to work while pregnant.

8. On January 5, 2023, Plaintiff presented to Ms. Oster and Mr. Goldsmith a note from her primary care physician confirming her pregnancy and restricting her lifting abilities to no more than 10 pounds. As an accommodation, Plaintiff was temporarily reassigned to the automated lines, which involve light lifting.

9. For one week, Plaintiff worked on the automated lines with no problems.

10. On January 12, 2023, Plaintiff presented to Ms. Oster and Mr. Goldsmith a note from her obstetrician changing her lifting abilities to no more than 20 pounds. In response to this new doctor's note, Plaintiff was reassigned from the automated lines to her pre-pregnancy position, which required lifting boxes that weighed almost or more than 20 pounds. This role also involved frequent overhead lifting of boxes.

11. Over the next month, Plaintiff experienced numerous physical problems performing this role. Frequently, she was not given assistance lifting heavy boxes, despite her

repeated requests. Only one coworker provided lifting assistance, but that coworker was not always available. When Plaintiff complained about the lack of lifting assistance, Ms. Oster instructed her to lift the boxes without assistance. Frequently, Plaintiff was required to lift boxes to shoulder-level heights and above without help. Doing so caused extreme pain and discomfort – much more so than she had previously experienced prior to becoming pregnant.

12. On numerous occasions, Plaintiff complained of the pain that she was experiencing caused by the repetitive lifting to both Ms. Oster and Mr. Goldsmith.

13. Because Plaintiff's lifting restrictions were not being honored, she asked both Ms. Oster and Mr. Goldsmith if she could be reassigned to the automated lines. In making this request, Plaintiff described the frequent pain and discomfort that she was experiencing while lifting boxes and the lack of lifting assistance that she was given. Plaintiff made this accommodation request several times.

14. Eventually, Ms. Oster denied Plaintiff's request to be reassigned to the automated lines. Ms. Oster claimed that, because the two employees assigned to the automated lines could not speak English, they could not swap roles with Plaintiff due to difficulty in training them for Plaintiff's position. However, this reason was false. One of the employees – Christina Chubb – already had experience on the machines that Plaintiff was operating. Therefore, the role swap between Plaintiff and Ms. Chubb was a reasonable accommodation.

15. Mr. Goldsmith became increasingly hostile to Plaintiff's pleas for accommodation. After Plaintiff had requested a transfer to lighter duty on the automated line, Mr. Goldsmith insinuated that any more reassignment requests would be treated as insubordination, warranting termination.

16. In late January 2023, Plaintiff informed Mr. Goldsmith early in her shift that the lifting had caused her so much pain that she needed permission to leave work early to go to the hospital. Mr. Goldsmith stated that he would check her attendance record. About halfway through her shift, Plaintiff again asked Mr. Goldsmith if she could leave to go to the hospital. He replied that she only had four more hours to work and suggested that she wait to go to the hospital until her shift ended.

17. On the morning of February 14, 2023, Plaintiff awoke with heavy bleeding. At 6:29 AM, she sent a text message to Ms. Oster stating, "I will not be coming to work I am bleeding and gonna have to go to the hospital to have the baby checked." Later that same day, Plaintiff experienced a miscarriage.

18. Over the course of the next two weeks, because of complications from her miscarriage, Plaintiff experienced frequent heavy bleeding, pain, and extreme anxiety and distress over the loss of her baby and her own physical health.

19. Under the Tennessee Pregnant Workers Fairness Act, it is unlawful for an employer to fail or refuse to make a reasonable accommodation for an employee's medical needs arising from childbirth, unless the employer demonstrates that the accommodation would impose an undue hardship. Tenn. Code Ann. §50-10-103(b)(1).

20. Reasonable accommodations under TPWFA include providing assistance with manual labor and limits on lifting, authorizing a temporary transfer to a vacant position, and providing job restructuring or light duty. Tenn. Code Ann. § 50-10-102(3)(F)-(H). With respect to light duty assignments, an employer is required to create a light duty position for the pregnant employee under the TPWFA if the employer has provided light duty positions to other employees in the past. Tenn. Code Ann. § 50-10-103(a)(3).

4

Case 1:23-cv-00092-TAV-SKL   Document 1   Filed 04/18/23   Page 4 of 7   PageID #: 4

21. In 2022, Defendant accommodated the pregnancy needs of one employee by reassigning her to the automated lines for several months until she delivered her baby.

22. In the past, Defendant has also created temporary light duty assignments for employees with on-the-job injuries.

23. By repeatedly refusing to grant Plaintiff's requests for pregnancy-related accommodations, Defendant (through its agents Mr. Goldsmith and Ms. Oster) acted intentionally and/or recklessly inasmuch as Defendant was aware of its affirmative obligations under the TPWFA to provide such reasonable accommodations.

24. The cumulative effects of Defendant's repeated refusals to accommodate Plaintiff's pregnancy-related weight-lifting restrictions culminated in Plaintiff's constructive discharge.

## V. CAUSE OF ACTION

25. Plaintiff requested from Defendant on multiple occasions the reasonable accommodations of providing assistance with manual labor, transferring to another position that required less lifting, and light duty assignments, all in accordance with Tenn. Code Ann. §50-10-102(3)(B)-(C).

26. Defendant was aware that Plaintiff's accommodation requests related to her pregnancy.

27. Defendant cannot demonstrate that the accommodations proposed by Plaintiff would impose an undue hardship on the Defendant's business operations.

28. Defendant unlawfully denied Plaintiff's accommodations requests in violation of the TPWFA, Tenn. Code Ann. §50-10-103(b)(3).

29. Defendant's unlawful actions culminated in Plaintiff's constructive discharge.

## VI. DAMAGES

30. As a result of Defendant's unlawful conduct, Plaintiff has suffered both financially (in the form of lost wages) and emotionally (in the form of emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life).

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays:

a. That proper process be issued and served upon Defendant, and that Defendant be required to answer within the time prescribed by law;

b. That the Court issue an injunction requiring Defendant to reinstate Plaintiff at her former position or at an equivalent position with all employment rights and benefits to which she would have been entitled but for her discharge, and without harassment or illegal conditions imposed on her job; or, in the alternative, front pay and benefits in lieu of reinstatement;

c. That upon the hearing of this cause Plaintiff be awarded judgment for back pay, including the value of all employment benefits which she has lost from the date of her discharge through the date of trial, as well as prejudgment interest;

d. That Plaintiff be awarded compensatory damages, including damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

e. That Plaintiff be awarded all reasonable attorney fees and litigation costs;

f. That Plaintiff be awarded punitive damages;

g. That a jury try the issues in this cause; and

h. For any further or additional relief to which the Court deems proper.

                **MIKEL & HAMILL PLLC**

By:   s/ *Doug S. Hamill*
       Doug S. Hamill, BPR No. 022825
       Attorney for Plaintiff
       620 Lindsay Street, Suite 200
       Chattanooga, TN 37403
       (423) 541-5400
       dhamill@mhemploymentlaw.com